UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

NATHANIEL JENKINS,

        Plaintiff,                  Case No. 1:21-cv-646

v.                                      Honorable Phillip J. Green

JOHN DAVIDS, et al.,

        Defendants.
_____/

## OPINION DENYING LEAVE
## TO PROCEED *IN FORMA PAUPERIS* - THREE STRIKES

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff seeks leave to proceed *in forma pauperis*. Because Plaintiff has filed at least three lawsuits that were dismissed as frivolous, malicious or for failure to state a claim, he is barred from proceeding *in forma pauperis* under 28 U.S.C. § 1915(g). The Court will order Plaintiff to pay the $402.00 civil action filing fees applicable to those not permitted to proceed *in forma pauperis*.[1] This fee must be paid within 28 days of this opinion and accompanying order. If Plaintiff fails to pay the fee, the Court will order that this case be dismissed without prejudice. Even if the case is dismissed,

---

[1] The filing fee for a civil action is $350.00. 28 U.S.C. § 1914(a). The Clerk is also directed to collect a miscellaneous administrative fee of $52.00. 28 U.S.C. § 1914(b); https://www.uscourts.gov/services-forms/fees/district-court-miscellaneous-fee-schedule. The miscellaneous administrative fee, however, "does not apply to applications for a writ of habeas corpus or to persons granted *in forma pauperis* status under 28 U.S.C. § 1915." *Id*.

Plaintiff must pay the $402.00 filing fees in accordance with *In re Alea*, 286 F.3d 378, 380–81 (6th Cir. 2002).

## Discussion

The Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996), which was enacted on April 26, 1996, amended the procedural rules governing a prisoner's request for the privilege of proceeding *in forma pauperis*. As the Sixth Circuit has stated, the PLRA was "aimed at the skyrocketing numbers of claims filed by prisoners–many of which are meritless–and the corresponding burden those filings have placed on the federal courts." *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997). For that reason, Congress created economic incentives to prompt a prisoner to "stop and think" before filing a complaint. *Id.* For example, a prisoner is liable for the civil action filing fee, and if the prisoner qualifies to proceed *in forma pauperis*, the prisoner may pay the fee through partial payments as outlined in 28 U.S.C. § 1915(b). The constitutionality of the fee requirements of the PLRA has been upheld by the Sixth Circuit. *Id.* at 1288.

In addition, another provision reinforces the "stop and think" aspect of the PLRA by preventing a prisoner from proceeding *in forma pauperis* when the prisoner repeatedly files meritless lawsuits. Known as the "three-strikes" rule, the provision states:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under [the section governing proceedings *in forma pauperis*] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). The statutory restriction "[i]n no event," found in § 1915(g), is express and unequivocal. The statute does allow an exception for a prisoner who is "under imminent danger of serious physical injury." The Sixth Circuit has upheld the constitutionality of the three-strikes rule against arguments that it violates equal protection, the right of access to the courts, and due process, and that it constitutes a bill of attainder and is *ex post facto* legislation. *Wilson v. Yaklich*, 148 F.3d 596, 604–06 (6th Cir. 1998).

Plaintiff has been an active litigant in the federal courts in Michigan. In at least three of Plaintiff's lawsuits, the Court entered dismissals on the grounds that the cases were frivolous, malicious, and/or failed to state a claim. *See Jenkins v. Pandya*, No. 1:95-cv-865 (W.D. Mich. Jan. 4, 1996); *Jenkins v. Calley*, No. 4:95-cv-59 (W.D. Mich. June 27, 1995); *Jenkins v. Pandya*, No. 1:94-cv-182 (W.D. Mich. May 25, 1994). Although all of the dismissals were entered before enactment of the PLRA on April 26, 1996, the dismissals nevertheless count as strikes. *See Wilson*, 148 F.3d at 604. Additionally, Plaintiff has been denied leave to proceed *in forma pauperis* on multiple occasions because he has three strikes. *See Jenkins v. Washington et al.*, No. 2:21-cv-151 (W.D. Mich. July 7, 2021); *Jenkins v. Munson Healthcare Manistee Hosp.*, No. 1:21-cv-388 (W.D. Mich. June 23, 2021); *Jenkins v. Davids, et al.*, No. 1:21-

3

cv-394 (W.D. Mich. May 20, 2021); *Jenkins v. Weston*, No. 1:99-cv-243 (W.D. Mich. Aug. 26, 1999); *Jenkins v. Tyszkiewicz*, No. 1:99-cv-147 (W.D. Mich. Apr. 28, 1999); *Jenkins v. Frentner*, No. 1:96-cv-797 (W.D. Mich. June 5, 1997).

Moreover, Plaintiff's allegations do not fall within the "imminent danger" exception to the three-strikes rule. 28 U.S.C. § 1915(g). The Sixth Circuit set forth the following general requirements for a claim of imminent danger:

> In order to allege sufficiently imminent danger, we have held that "the threat or prison condition must be real and proximate and the danger of serious physical injury must exist at the time the complaint is filed." *Rittner v. Kinder*, 290 F. App'x 796, 797 (6th Cir. 2008) (internal quotation marks omitted). "Thus a prisoner's assertion that he or she faced danger in the past is insufficient to invoke the exception." *Id.* at 797–98; *see also* [*Taylor v. First Med. Mgmt.*, 508 F. App'x 488, 492 (6th Cir. 2012)] ("Allegations of past dangers are insufficient to invoke the exception."); *Percival v. Gerth*, 443 F. App'x 944, 946 (6th Cir. 2011) ("Assertions of past danger will not satisfy the 'imminent danger' exception."); *cf.* [*Pointer v. Wilkinson*, 502 F.3d 369, 371 n.1 (6th Cir. 2007)] (implying that past danger is insufficient for the imminent-danger exception).
>
> In addition to a temporal requirement, we have explained that the allegations must be sufficient to allow a court to draw reasonable inferences that the danger exists. To that end, "district courts may deny a prisoner leave to proceed pursuant to § 1915(g) when the prisoner's claims of imminent danger are conclusory or ridiculous, or are clearly baseless (i.e. are fantastic or delusional and rise to the level of irrational or wholly incredible)." *Rittner*, 290 F. App'x at 798 (internal quotation marks and citations omitted); *see also Taylor*, 508 F. App'x at 492 ("Allegations that are conclusory, ridiculous, or clearly baseless are also insufficient for purposes of the imminent-danger exception.").

*Vandiver v. Prison Health Services, Inc.*, 727 F.3d 580, 585 (6th Cir. 2013). A prisoner's claim of imminent danger is subject to the same notice pleading requirement as that which applies to prisoner complaints. *Id.* Consequently, a prisoner must allege facts in the complaint from which the Court could reasonably

4

conclude that the prisoner was under an existing danger at the time he filed his complaint, but the prisoner need not affirmatively prove those allegations. *Id.* Plaintiff has filed a motion seeking an order that he is in imminent danger (ECF No. 2) and a motion to proceed *in forma pauperis* (ECF No. 3).

The instant case is one of three filed by Plaintiff nearly simultaneously. In *Jenkins v. McLearon et al.*, No. 1:21-cv-641, Plaintiff sues twelve medical providers who work or worked at Munson Healthcare Manistee Hospital. In *Jenkins v. Munson Healthcare Manistee Hosp.*, No. 1:21-cv-642 (W.D. Mich.), Plaintiff sued Munson Healthcare Manistee Hospital itself. Both complaints involved Plaintiff's treatment at the hospital on July 29 and 30, 2019.

In the instant case, Plaintiff again raises a number of unrelated allegations that appear to have begun shortly before July 29 to 30, 2019, though he does not specifically list the date of the events. The events occurred at the Ionia Correctional Facility (ICF), and he sues ICF Warden John Davids and a Defendant collectively named "Several Unknown Agents and a Nurse," whom the Court has docketed as Unknown Part(y)(ies) #1. Plaintiff, however, is housed at the Oaks Correctional Facility (ECF).

Plaintiff alleges that one of the unknown Defendants (part of the collective Unknown Part(y)(ies) #1) "used a highly pressurized chemical-blistering agent to spray the plaintiff's groin area that cause[d] the penis to be scalded and scaled." (Compl., ECF No. 1, PageID.4.) He alleges that his pelvis, intestines, rectum, and anus burned for nine days, causing an incurable rash. Plaintiff was shackled and

5

ordered to hold the drop chain. He then was ordered to take a shower, which allegedly caused the burning to increase. Plaintiff contends that the spraying of his groin with the blistering agent led to erosive esophagitis, erosive gastritis, an elevated left-liver lobe, a thickened appendix, pelvic ascites, pancreatitis, and secondary peritonitis.[2]

Plaintiff contends that, after he was shackled, an unknown nurse checked and adjusted the shackles, which only worsened the problem. Plaintiff complains that the shackles prevented him from holding the drop chain and moving properly, forcing him to dive into his cell. He also alleges that, when he told the officers and nurse that the shackles were too tight, they laughed at him. Plaintiff appears to allege that, because of the shackles, he suffered severe cuts to his legs and arms that cause him pain and suffering. When he was returned to his cell, he was given only a towel and underwear for more than 24 hours. In addition, Defendant unknown officials apparently hog-tied Plaintiff and left him to urinate and defecate on himself.[3]

Plaintiff next complains that during the time he was shackled, he was denied meals because he could not stand up and walk. He also alleges that he was denied a total of nine meals over an uncertain period, but the medical staff did not check on him.

---

[2] The Court notes that Plaintiff's listing of these conditions duplicates the observations contained in a report of a CT-scan conducted at Munson Healthcare Manistee Hospital on July 29, 2019. The report indicated the observations to be the result of a perforated gastric or duodenal ulcer. (1:21-cv-641, PageID.10–11.) None of the medical records reflect a connection with Plaintiff's groin being sprayed with a chemical, nor do Plaintiff's allegations in the prior two cases indicate a connection.

[3] Given Plaintiff's idiosyncratic method of listing his allegations, going back and forth in time without any chronology, the Court has summarized the allegations to the best of its ability.

Plaintiff next complains about severe stomach pains that began in 2017 and 2018, subsequently subsided, and began again on July 7, 2019. He suffered for 22 days before being sent to the hospital.[4] In August 2019, while he was still hospitalized, he heard back from the Legislative Ombudsman about his allegations into the improper shackling.

In his attached motion for imminent-danger status, Plaintiff complains that he has the following health conditions: "latent tuberculosis; adhesive capsulitis, erosive gastritis; thicken[ed] appendix; pancreatitis; plantar fasciitis[]; elevated left-liver lobe; mistreated hepatitis-C; enterohepatitis; secondary peritonitis; opportunistic infections; large amount of ascites and from the parathyroidectomy, fair amount of scarring and adhes[ion]; [and] degenerative joint disease in both hips and lower back . . . ." (Mot. for Imminent Danger Status, ECF No. 3, PageID.96.) Plaintiff alleges that he is being denied medical treatment at ECF and that Defendants are "giv[ing] them a second chance[] to kill [him]." (*Id.*)

Nothing in Plaintiff's allegations or medical records suggests that his medical condition as described in the July 2019 CT-scan report, is the same now—two years later. Plaintiff's conclusory allegations that he suffers imminent danger from the conditions identified in July 2019 fall well short of meeting the requisite notice pleading standard of Rule 8 of the Federal Rules of Civil Procedure. *Vandiver*, 727 F.3d at 585. The allegations of the complaint and the medical records attached to the

---

[4] This set of allegations appears involve the events leading to his hospitalization on July 29, 2019, as alleged in Case Nos. 1:21-cv-691 and 1:21-cv-692.

complaint in Case No. 1:21-cv-691 therefore are insufficient to allow the Court to reasonably conclude that Plaintiff was in imminent danger at the time he filed his complaint. *Id.*

Indeed, with respect to the ongoing and purportedly imminently dangerous lack of treatment for his medical conditions, Plaintiff complains that he is in imminent danger from medical providers ICF. Yet Plaintiff is no longer housed at ICF. The Defendants he sues cannot provide Plaintiff with any relief that would alleviate the serious risks of physical injury from the medical conditions alleged in the motion, because Defendants are no longer responsible for his care. Plaintiff therefore is not in imminent danger from the named Defendants. *See Pettus v. Morgenthau*, 554 F.3d 293, 297 (2d Cir. 2009) (seminal case, holding that there be some nexus between the imminent danger alleged by the prisoner and the legal claims asserted in his complaint); *Andrews v. Cervantes*, 493 F.3d 1047, 1053–54 (9th Cir. 2007); *Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003); *Day v. Maynard*, 200 F.3d 665, 667 (10th Cir. 1999) (holding that a prisoner does not meet the imminent-danger exception when he is no longer facing risk from the defendants he sues, because he has since been transferred to a different prison); *see also Pinson v. U.S. Dep't of Justice*, 964 F.3d 65, 71 (D.C. Cir. 2020) (holding that a nexus between the alleged imminent danger and the claims raised is required to avoid the conclusion that, at the same time it established the three-strikes rule, Congress intended to "'engraft[] an open-ended exception that would eviscerate the rule'") (quoting *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 315 (2d Cir. 2001)); *Meyers v. Comm'r of Soc. Sec.*

8

*Admin.*, 801 F. App'x 90, 94–95 (4th Cir. 2020) (citing *Pettus*, *inter alia*, and holding that "the better reading of the Imminent Danger Provision is that it requires a relationship between the imminent danger alleged in the IFP application and the facts alleged and relief sought in the underlying claim"); *Ball v. Hummel*, 577 F. App'x 96, 96 n.1 (3d Cir. 2014) (citing *Pettus*).

Although the Sixth Circuit has not yet specifically addressed whether the imminent-danger exception requires a nexus between the danger and the allegations of the complaint, *see Vandiver*, 727 F.3d at 588 (declining to reach issue), this Court concurs with the uniform opinion of all seven circuits that have addressed the issue: some nexus between the imminent danger and the claims raised is required in order to protect the meaning of the entire provision. This nexus requirement does not add a judicially created element to the statute. Instead, as the *Pettus* court recognized, a reading of the statute that incorporates a nexus rule flows from the fundamental rule of statutory construction requiring that a statute be read as a whole. 554 F.3d at 297. That rule of construction has been regularly repeated by the Supreme Court:

> The meaning—or ambiguity—of certain words or phrases may only become evident when placed in context. . . . It is a "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."

*FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132–33 (2000) (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989)), *quoted in Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 666 (2007); *see also Clark v. Rameker*, 573 U.S. 122, 131 (2014) (citing *Corley v. United States*, 556 U.S. 303, 314 (2009)).

9

An equally fundamental canon of statutory interpretation is that exceptions to a general rule must be read narrowly. *See Comm'r of Internal Revenue v. Clark*, 489 U.S. 726, 739 (1989) ("In construing provisions . . . in which a general statement of policy is qualified by an exception, we usually read the exception narrowly in order to preserve the primary operation of the provision."). And from this last canon arises the related principle that exceptions must not be interpreted so broadly as to swallow the rule. *See Cuomo v. Clearing House Ass'n, L.L.C.*, 557 U.S. 519, 530 (2009) (rejecting an interpretation of a statutory exception that "would swallow the rule").

As applied to § 1915(g), the imminent-danger exception must be read in light of the strong general thrust of the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996), which was "aimed at the skyrocketing numbers of claims filed by prisoners—many of which are meritless—and the corresponding burden those filings have placed on the federal courts." *Hampton*, 106 F.3d at 1286. Section 1915(g) is explicit, stating that "*[i]n no event* shall a prisoner bring a civil action or appeal . . ." if he has three strikes, unless his complaint alleges facts that fall within the narrow exception in issue. 28 U.S.C. § 1915(g) (emphasis added); *Pettus*, 554 U.S. at 297. Interpreting the statute without some link between the imminent danger alleged and the redress sought would cause the exception to swallow the rule, permitting a prisoner to file as many lawsuits as he wishes on any subject— as long as he can state that he is in imminent danger from something, even if that something is unrelated to his claims and unrelated to the named defendants. *See Pettus*, 554 F.3d at 297; *Pinson*, 964 F.3d at 71. Such a reading of the statute

10

would be inconsistent with the general rule of statutory construction, which requires that exceptions to a rule be read narrowly, so as not to undermine the general rule. *Clark*, 489 U.S. at 739; 2A Norman J. Singer, *Statutes and Statutory Construction*, § 47.11 at 246–47 (6th ed. 2000) ("[W]here a general provision in a statute has certain limited exceptions, all doubts should be resolved in favor of the general provision rather than exceptions."). Because Plaintiff's allegations concerning the ostensibly "imminent" danger he faces are incapable of redress in the instant case against the named Defendants, Plaintiff cannot demonstrate the requisite nexus. Permitting Plaintiff to proceed *in forma pauperis* based on allegations of unrelated imminent danger would permit the exception to § 1915(g) to swallow the rule.

Therefore, § 1915(g) prohibits Plaintiff from proceeding *in forma pauperis* in this action. Plaintiff has twenty-eight (28) days from the date of entry of this order to pay the civil action filing fees, which total $402.00. When Plaintiff pays his filing fees, the Court will screen his complaint as required by 28 U.S.C. § 1915A and 42 U.S.C. § 1997e(c). If Plaintiff does not pay the filing fees within the 28-day period,

this case will be dismissed without prejudice, but Plaintiff will continue to be responsible for payment of the $402.00 filing fees.

Dated:   August 24, 2021             /s/ Phillip J. Green
                                                       PHILLIP J. GREEN
                                                       United States Magistrate Judge

**SEND REMITTANCES TO THE FOLLOWING ADDRESS**:

Clerk, U.S. District Court
399 Federal Bldg.
110 Michigan St., N.W.
Grand Rapids, MI 49503

**All checks or other forms of payment shall be payable to "Clerk, U.S. District Court."**